### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**CASE NO.:**

KARL GROSSINGER, individually and on
behalf of all others similarly situated,

        Plaintiff,

vs.

ALLY FINANCIAL INC., &
ALLY BANK, &
BETTER MORTGAGE CORPORATION

        Defendants.

_____/

### CLASS ACTION COMPLAINT

        Plaintiff Karl Grossinger brings this lawsuit on behalf of himself and a proposed Nationwide/Florida class of similarly situated people who financed or re-financed their homes through Ally Financial, Inc., Ally Bank Corp., (collectively, "Ally") and/or Better Mortgage Corp (collectively, "Defendants"). Plaintiff, through his Counsel, alleges the following based on publicly available information, investigation of Counsel, and information and belief.

### I.       INTRODUCTION

        1.     Karl Grossinger entrusted the refinancing of his home to Ally, who in partnership with Better Mortgage Corp., bills itself as a "relentless ally for [its customers'] financial well-being"[1] and a company "committed to its promise to 'Do It Right' for its consumer, commercial and corporate customers."[2] Mr. Grossinger did not realize that behind their customer-focused veneer, Defendants

---

[1] *See* https://www.ally.com/about/company-structure/
[2] *See* Company Fact Sheet, available at
https://filecache.mediaroom.com/mr5mr_ally/185179/35381%20Q2%202022%20Fact%20Sheet%20final.pdf

had in place a systematic scheme to charge mortgage borrowers unwarranted fees to complete the loan process.

2.      When Mr. Grossinger began the financing process, Defendants agreed to "lock" the offered mortgage interest rate for his potential loan during the closing process. When that process was delayed through no fault of Mr. Grossinger's, Defendants charged Mr. Grossinger a fee to continue to lock the offered interest rate.

3.      What happened to Mr. Grossinger is part of Defendants' systematic effort to charge home loan and refinance borrowers fees to extend their mortgage interest rate lock periods when the Defendants, not the borrower, caused the need for that extension.

4.      To right this wrong, ensure Defendants repay all unlawfully charged fees, obtain available statutory and other damages, and hold Defendants accountable for their abuse of customer trust, Mr. Grossinger brings this class action Complaint on behalf of himself and all similarly situated Ally and/or Better Mortgage Corp. borrowers nationwide.

## II.      JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on the federal statutory claims below, and the Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

6.      This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has jurisdiction over Defendants, a substantial portion of the alleged wrongdoing occurred in this

District and Florida, and Defendants have sufficient contacts with this District and Florida, as described herein.

8.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District.

### III.    PARTIES

9.      Plaintiff Karl Grossinger is a resident and citizen of Miami-Dade County, Florida.

10.     Defendant Ally Financial, Inc. is incorporated in Delaware with its principal place of business in Detroit, Michigan, with its banking operations (Ally Financial, Inc.'s subsidiary, Ally Bank Corp.) headquartered in Sandy, Utah. Ally is an online financial services company with 10,700 employees, $184 billion in total assets, and 10.5 million customers. During the year ending on December 31, 2021, Ally originated $10.4 billion of mortgage loans through its direct-to-consumer channel.[3] It provides a digital direct bank which offers mortgage lending, among other services, which include banking, auto finance, insurance services, a consumer credit card business, a corporate finance business for equity sponsors and middle-market companies, and securities brokerage and investment advisory services.

11.     In April 2019, Ally announced a strategic partnership with Better Mortgage Corporation (BMC). Through this partnership, "BMC conducts the sales, processing, underwriting, and closing for Ally's digital mortgage offerings…while Ally retains control of all the marketing and advertising strategies and loan pricing."[4] Better Mortgage Corporation is headquartered in New York, New York.

---

[3] *Id.*
[4] *See* Ally Financial 10K, December 31, 2021.

12.     At all relevant times, Better Mortgage Co. and its subsidiaries, affiliates, and other related entities, as well as its respective employees, were the agents of Ally Financial, Inc. and Ally Bank Corp. acting within the scope and purpose of that agency.

### IV.     FACTUAL ALLEGATIONS

13.     Defendants provide online mortgage lending and servicing to customers across the country.

14.     Ally, in partnership with Better Mortgage Corp., promises its customers a simple process, free from origination fees, wherein a borrower can complete an application in under 15 minutes through a digital platform and close their loan up to 10 days faster than industry averages.



15.     Ally Bank's billions of dollars in mortgage origination profits appear to derive in part from its systematic effort to wrongly charge borrowers like Plaintiff fees to borrow money at their promised mortgage interest rate, and to mislead borrowers about that scheme.

**A.      Defendants' Mortgage Rate Lock Fees**

16.     When a customer approaches Ally Bank to get a home mortgage or refinance, the Bank typically commits to fund the customer's loan at a stated interest rate *if* the home purchase and

loan close within a given period, usually 30 to 90 days. That commitment is the interest "rate lock," and the 30 or 90 days is the "rate lock period."

17.     If the real estate closing does not occur within the rate lock period, the period can be extended. If the delay in closing is the borrower's fault, the borrower pays a fee, the amount of which is based on the size of the loan. If the delay in closing is the Bank's fault, the Bank is supposed to absorb the cost of extending the rate lock period.  Ally Bank explains this rate lock extension policy to its customers in its "Frequently Asked Questions" page:



← Frequently asked questions

**What if my lock expires before my loan is complete?**

We will extend your lock if it expires before your loan closes, but a lock extension fee may be applicable. If the loan delay was caused due to any complications on our end, we will waive the lock extension fee.

18.     Those "Rate Lock Extension Fees" can be significant. The fees are reportedly set at 1 basis point or .0001 of the loan amount, per day, depending on the type of loan.

19.     Despite those Bank-caused delays, Ally and Better Mortgage Corp. seek to shift the blame to their customers for the delays so that the Bank can charge Rate Lock Extension Fees. To shift the blame to customers, employees manufacture excuses for the delays, like needing an updated bank statement, or missing signatures, paperwork, or pages in material the borrowers already submitted.

20.     Mr. Grossinger is not alone. Other customers have complained about Ally's practice, both informally on consumer forums and through formal channels such as the Consumer Financial Protection Bureau:



plazma15
April 22, 2022 • @plazma15

★☆☆☆☆

Ally refused to waive a rate lock extension fee on my mortgage application (which expired due to a delay in construction outside my control). They would rather lose a customer with over $250,000.00 in assets with Ally than extend a simple courtesy. It was impossible to reach anyone from their Executive Customer Relations team by phone, despite leaving multiple messages requesting a return call. Choose a better bank, one that actually values its clients over penny-pinching policies.

Product: Ally Bank Mortgages

Comment  👍 0  👎 0



# 5356228

Date CFPB received the complaint
3/23/2022

Started the refinancing process with Ally bank on or around XXXX XXXX. I was approved, and a rate of 3.3 % was locked. The appraisal was waived (see attached). All pertinent information was provided, reviewed, and completed by Ally's staff, and closing was scheduled for XX/XX/XXXX. However, I encountered a problem with the closing rep, and I requested another rep to finish the process. I have a lien of {$20000.00} that was supposed to be added to the loan, ("The Subordinate Deed of Trust is being added to your loan to be paid off at closing. Once fully added a new loan estimate will be sent to you for review " from XXXX XXXX on XX/XX/XXXX), but the reps failed to complete this process prior to closing. As such, I was told by the closing agent, XXXX XXXX, that the team was going to correct the issue, and closing needed to be rescheduled for another date. I received an email from XXXX XXXX on XX/XX/XXXX stating my rate went from 3.3 % to 3.5 %. On XX/XX/XXXX, the rate went from 3.5 % to 3.625 %. I disputed the rate hikes because I was a day from closing with a rate of 3.3 %. XXXX stated he would seek a "concession " because of the mistakes on Ally's part. XXXX days later, he informed me that the concession was only {$250.00}, which would not change my rate. I told him that was just unfair, and he states he would escalate the issue to another team. Today, XX/XX/XXXX, I received an email from XXXX XXXX stating " Your appraisal has been

ordered. " Bear in mind that this process was waived early in the process, and we were in closing. Moreover, I was not aware of the appraisal and I did not approve it. I also received an email from Collateral Inspections requesting that I choose a date for next week. It appears Ally is doing everything to get out of this deal now that interest rates have gone up. They are using the appraisal against me because I informed XXXX XXXX that my daughter and my husband are unable to be exposed to anyone during the pandemic due to underlying health conditions. This is unfair, unethical, misleading



# 5168739

Date CFPB received the complaint

1/31/2022

Consumer complaint excerpt

I'm absolutely livid with the experience so far with Ally/XXXX They bait and switch on their rates and credits/points. I downloaded my purchase agreement with a rate lock indicating 3.375 % with a {$240.00} credit. However, after the download into their system, to my disbelief, I locked in at 3.375 % with a {$300.00} charge. It really irks me when i get baited and switched, especially since I have had a banking relationship with Ally for several years…I expect better from this bank.



# 5162595

Date CFPB received the complaint

1/29/2022

Consumer complaint excerpt

Ally Bank is not honoring the pricing on the commitment letter for a Mortgage refinancing despite the issue being a bank error. Details are below: I was given until XX/XX/XXXX EOB to upload documents showing sufficient reserves The application was prematurely denied on XX/XX/XXXX prior to the deadline set forth in the attached email I submitted

documents showing sufficient reserves in the morning of XX/XX/XXXX which were accepted and my application was approved. Because the application was prematurely denied without allowing sufficient time for me to upload documents, when they were in fact uploaded by the XX/XX/XXXX deadline, my application was conditionally approved but not at the pricing set forth in the commitment letter. This is a violation of the terms set forth in the commitment letter by which the lender is obligated to make a mortgage loan at the pricing set forth in the document. Original commitment letter pricing for XXXX XXXX XXXX locked through XX/XX/2022: .25 % points, 2.875 % fixed for 360 Months which Ally Bank has denied the request to honor. Instead they are offering the current market rate which is substantially higher costing me thousands of dollars more…



# 4032417

## *Date CFPB received the complaint*

12/26/2020

Consumer complaint excerpt
… Was told we would be going beyond our lock rate date and would need to "to either extend the lock or pull the application. " No costs or other information was provided to us. As rates have decreased since we started this process, this seems like a deceptive practice to obtain more money from us without giving us complete information.



# 3959900

## *Date CFPB received the complaint*

11/17/2020

Consumer complaint excerpt
I applied for a loan and locked in on an interest rate with Ally Bank on XX/XX/XXXX. When I talked to the representative walking me through the online process he told me they could get the loan done within the 30 day lock period. If there were any delays from Ally then I would get an extension at no cost. The seller was having a new roof installed so when Ally scheduled the Appraisal I asked them how they wanted to handle the appraisal if the roof

wasn't going to be put on for 2 weeks. I was instructed that the appraisal was the last thing Ally required and to work with the Appraisal company directly to schedule around the roof. For the next 20 days, I answered every online task in less than 5 hours to keep the process on track. On XX/XX/XXXX I receive an email from Ally telling me I do not have enough funds to close on the new property. If I do not produce the funds in 10 days they will cancel the application. I reviewed the closing disclosure and found 4 mistakes by Ally. I responded immediately and scheduled a follow up call with the underwriting specialist. That day he fixed one of Ally's mistakes and told me he was working on the others. On XXXX the appraisal was completed and sent to Ally. By XXXX, I had not heard anything from Ally as to the scheduled closing for XXXX. On the evening of XXXX, I scheduled a call with the Ally agent to determine where we were in the process and what they needed to close before the lock expired on XXXX. The agent called and we were immediately disconnected. She later texted me telling me she was out of the office for the past 5 days and now her company phone line is down. She emailed me saying the same thing I was told on XX/XX/XXXX that I needed more funds to close. I explained to her that the previous agent was working to fix the issues. She understood the problem and said we needed to talk once her phone line was back. The next day on XXXX her phone line was still down. I called the company number and was ultimately patched through to her manager. He reviewed the file and agreed there were multiple mistakes on the closing disclosure. He said he needed to get the XX/XX/XXXX licensed agent assigned to the loan to fix the issue. ==He told me not to worry about the rate extension and he would get back with me by the end of the day with answers.== As of XX/XX/XXXX I have not heard back from the manager or the XX/XX/XXXX agent he had assigned to fix the issues. On XXXX, I finally connected with the Ally agent assigned to my loan. She told me that I needed to pay off a car loan to meet a certain XXXX. I questioned the XXXX but she was not able to tell me how it was calculated. To this day I still think it is wrong but agreed to pay the loan off. I went to the bank that afternoon on XXXX and paid off the loan. I inquired if the XX/XX/XXXX agent had looked at or fixed the closing disclosure. She replied to me in an email that she was not able to contact him and suggested I try to get in touch with him myself. On XX/XX/XXXX, I reach out to theXX/XX/XXXX agent and copy my loan agent pleading for help. As of XX/XX/XXXX, I still have not heard from him. ==Later that afternoon on XX/XX/XXXX my agent emails me and says the rate was extended but will cost me {$800.00}.== She referenced the appraisal being delayed was the reason they would not cover the extension even though it was the same agent that instructed me to wait. On XX/XX/XXXX Ally requested I upload my Insurance Binding Contract to be paid at closing. I uploaded the document and within 2 hours the document was rejected. They stated I needed to upload a receipt of payment even though the task clearly stated the insurance would be paid at closing. On Monday, XX/XX/XXXX I paid the home insurance policy as directed. I uploaded the receipt and the document was rejected again. Now they are requesting the original document I uploaded on Friday XX/XX/XXXX. At this point the closing disclosure will need to be updated again to show the insurance was already paid with an effective date of XX/XX/XXXX as requested by Ally. I scheduled a call with my agent on XX/XX/XXXX. ==She informed me that the rate extension was now being covered 100 % and the XX/XX/XXXX agent was trying to fix all the issues by XXXX that night.== I then got an email from the agent that night saying to go ahead and sign the disclosure to keep the closing on track and they would work to get the disclosure fixed by the next day. I approved the disclosure on the ==evening of XX/XX/XXXX. On XX/XX/XXXX the agent hands me over to==

==the closing specialist. She informs him that the closing disclosure is still being fixed but the rate extension is no longer being covered.== This gets us to this complaint. It has taken Ally over 20 days to fix 4 mistakes that I called out. These are basic mortgage items that were overlooked and never addressed. I sent detailed explanations and power point slides to call out the mistakes. It wasn't until XX/XX/XXXX that they acknowledged all mistakes I called out were fixed and I now have enough funds to close. Issues called out: 1. they showed buyer paying all of the XXXX property tax $ XXXX when the seller would pay from XXXX thru Closing 2. When I applied I did not agree to escrow taxes or insurance because I was doing 20 % down. 3. They showed the buyer paying all of the Transfer Taxes when in XX/XX/XXXX, XXXX XXXX the seller pays the transfer taxes and it was not called out otherwise in the contract. 4. They did not include the Earnest money as a Buyer Credit 5. They showed I owed Home Insurance when it had already been paid I have emails and screen shots documenting all of these communications or lack thereof. ==I am now paying home insurance for a home I do not own and they continue to charge me each day while they fix their mistakes. This certainly does not seem ethical possibly illegal.==



# 3838000

### *Date CFPB received the complaint*

9/9/2020

Consumer complaint excerpt
Let me start by briefly explaining the problem. We recently went through refinancing our home with Ally Bank. After we signed all the paperwork at the closing on XX/XX/XXXX, Ally called me in the afternoon of XX/XX/XXXX, ==the day the loan was to fund informing us that we had to pay an additional {$350.00} for a lock extension or they would not fund the loan. We felt very pressured and bullied into being forced to pay this fee at the last minute in order to avoid either additional rate lock extension fees or the whole loan being cancelled. We don't believe we should have been forced to pay this fee after we had already signed all the paperwork at closing.== Now for a little more context. Time leading up to the loan application getting approval from underwriting: During the rate lock period when Ally was collecting information, there was a period of time (about 1 month; XX/XX/XXXX to XX/XX/XXXX) where they did not specify specifically what piece of information they needed with respect to a lawsuit. They requested something along the lines of "documents related to the lawsuit. " I told them I didn't have anything, and asked what they needed and/or why. This was around XX/XX/XXXX. We didn't hear anything from the bank about the progress of the loan other than the portal showed it was on track. I contacted them by phone and through their online portal about the loan, but never received an indication that what they needed was a copy of the complaint. Finally, around XX/XX/XXXX, they indicated they needed the

complaint. I didn't have it at the time but submitted a copy of the settlement. They said this would not suffice and said again I needed to submit the complaint and finally explained why to show that I was in fact the plaintiff, not the defendant. I then asked my attorney for the complaint and then submitted it to Ally Bank. Because they did not have the complaint the loan application would not go through underwriting and as a result the rate lock was set to expire the day before closing. Had Ally indicated they needed the complaint back in XX/XX/XXXX, I could have gotten them what they needed sooner, but they did not provide me with a specific indication until late XX/XX/XXXX. Time leading up to closing: Prior to closing they informed us that we would need 6 days of extension to cover the time to the funding of the loan. I told them I didn't think I should have to pay because we had provided everything they requested in a timely manner. Ally said they would check to see if Ally would cover the fees. Then the day before closing they said Ally would cover {$250.00} and we would need to pay the remaining {$350.00}. I said that was not right and asked to speak to a manager who was capable of making decisions and was denied. I did later receive a call from XXXX, she said she would relay the message and call me back about the issue. I never received a phone call back or any message through the portal, but I did get an email which unfortunately went to my junk email. The email said that Ally would cover {$250.00} but we would need to cover {$350.00} and then asked what we wanted to do. She did not call that day, and she did not call the day of the closing or in any way attempt to follow up to see what we wanted to do. Day of closing and post closing: I logged into the Ally portal the morning of closing and saw that the lock had been extended and that the closing papers that were available did not have any charge for a lock extension. So I had assumed Ally was covering the fees. We proceeded to go ahead with the closing. About an hour or so after we finished, Ally called to ask if we had any questions, about the closing. We said we already closed. She did not mention anything about us owing additional money for the lock extension. Then two days after closing (on the XX/XX/XXXX ) they apparently posted to the portal a changed closing disclosure notice that had the fees, but they did not call to let us know that it was posted. Then on the XX/XX/XXXX the day the loan was supposed to fund, they called to tell us about the changed closing disclosure and said if we don't sign now and give them {$350.00} they would not fund the loan. I still feel they are solely responsible for this fee. Plus, the fact that we had already closed and the fee was not listed, they shouldn't be allowed to hold up funding unless we pay.



# 3023862

**Date CFPB received the complaint**

9/19/2018

Consumer complaint excerpt
We applied for a mortgage with Ally Bank and were approved to close on XX/XX/2018. A problem came up last minute where the city refused permission to repair the existing septic and required a city sewer hookup instead. The city was not able to provide dates where this could take place. 1) Ally refused to close without the work being complete. Other lenders will proceed with a hold back of funds for the work. 2) Ally refused to allow a new rate when the lock expired, instead instituted a {$340.00} fee every 5 days rate extension fee until the work was done. This is the equivalent of a blank check, which is not workable. 3) Ally refused to release our appraisal which WE paid for up front so that we could use it for a mortgage company that was willing to close with a funding hold back. Ally gave us no options except an open ended and rapidly escalating fee. I feel our appraisal is being withheld out of spite as other financial institutions will transfer appraisals. The situation was not our doing, yet Ally gave us no option but to pay them thousands of dollars in extra fees.

***

21.     In short, Plaintiff's experience—described in more detail below—appears to be part of a widespread, systematic effort to foist unwarranted fees onto Defendants' borrowers.

22.     Defendants were or should have been aware of this widespread practice.

23.     Defendants acted willfully, with reckless disregard for the rights and interests of Plaintiff and the Class, with gross negligence, or with both, such as to warrant an award of punitive damages.

24.     Though Defendants knew or should have known about these practices, they failed to stop them.

**B.    Plaintiff Grossinger's Experience**

25.     Mr. Grossinger sought to refinance his home in Miami, Florida. Persuaded by Ally's promise of a customer-focused, efficient home loan application process as touted in its advertising, Mr. Grossinger went to Ally. Ally Bank thereafter approved Mr. Grossinger's loan while Mr. Grossinger's existing home equity line of credit (HELOC) at Bank of America was also open.

26.     On February 4, 2022, Ally Bank issued Mr. Grossinger a loan estimate that included a quoted interest rate of 2.99% on a 30-year fixed mortgage. That estimate included a "rate lock" set to expire by April 5, 2022.

27.     Mr. Grossinger diligently provided Defendants with the information it requested to process the financing.

28.     Defendants knew at the time it approved Mr. Grossinger's loan application that Mr. Grossinger wished to keep his HELOC account with Bank of America open, which would require Mr. Grossinger to successfully complete a separate loan subordination process with Bank of America prior to closing. Defendants also knew for multiple months that Mr. Grossinger wished to work with his own title agent, Mena Law firm, instead of Defendants' internal title employees.

29.     Defendants caused delays in the processing of Mr. Grossinger's loan paperwork which necessitated an extension of the rate lock period. Defendants thereafter sought to shift the blame for their conduct to Mr. Grossinger. For example, the subordination package prepared by Defendants for review and processing by Bank of America for the subordination process was incomplete and riddled with errors. Defendants were made aware of these deficiencies yet waited at least a week before making any necessary corrections or additions for the paperwork to be processed by Bank of America. Defendants later cited Mr. Grossinger's failure to complete the loan subordination process as a basis for needing an extension of the rate lock period. However, any fault for the timing or manner of the subordination process plainly lies solely with Defendants.

30.     Defendants also cited Mr. Grossinger's hiring of a third-party title agent, the Mena Law Firm, which they alleged occurred late in the loan process, as grounds for needing to extend the rate lock period. However, Mr. Grossinger made Defendants aware of his hiring of a third-party title agent months before the rate lock deadline.  Once again, Defendants' attempt to pass the blame fails of its own weight.

31.     Additional, implausible grounds raised by Defendants as necessitating an extension of the rate lock extension period included Mr. Grossinger's request to reduce the loan amount from

$650,000 to $647,000, an insignificant change to the overall loan, and an underwriting exception on the debt to income ratio made *one month earlier*.

32.     As reflected in their Loan Estimates dated February 4, 2022 and February 24, 2022, Defendants' original estimated loan charges were shown to be equal to 1.433% of the loan amount, or $9,318.00:

### Closing Cost Details

| Loan Costs | |
| --- | --- |
| A. Origination Charges | $9,318 |
| 1.433% of Loan Amount (Points) | $9,318 |

However, Defendants charged Mr. Grossinger a rate lock extension fee of $691.58, as reflected in the difference between the above estimated loan charge, and the loan charge reflected in Mr. Grossinger's closing documents, equal to 1.547% of the loan amount, or $10,009.58:

| Loan Costs | | At Closing | Before Closing | Paid By Others |
| --- | --- | --- | --- | --- |
| A. Origination Charges | | $10,009.58 | | |
| 01 1.547 % of Loan Amount (Points) | | $10,009.58 | | |
| 02 Broker Compensation | to Better Mortgage Corporation | | | (L) $1,010.00 |
| 03 | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| B.  Services Borrower Did Not Shop For | | $686.00 | | |

33.     Mr. Grossinger has sent emails to Defendants' customer service representatives explaining that he was being charged a fee to extend his interest rate lock when the delay was Defendants' fault, not his own. But Defendants have not paid the fee.

34.     Mr. Grossinger has therefore suffered concrete, particularized injury caused by Defendants' actions, which this lawsuit can redress.

## V.      CLASS ACTION ALLEGATIONS

35.      This matter is brought by Plaintiff on behalf of himself and those similarly situated,

under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). The Classes that Plaintiff seeks to

represent are defined as follows:

**Nationwide Class**
All persons who obtained an Ally Bank and/or Better Mortgage Company mortgage,
including a refinance, for a residential property within 3 years of the filing of the
Complaint[5], and were charged one or more fees to extend a mortgage interest rate lock
extension ("Rate Lock Extension Fees") in violation of Defendants' rate lock extension
policy.

**Florida Sub-Class**
All persons who obtained an Ally Bank and/or Better Mortgage Company mortgage,
including a refinance, for a residential property in Florida within 4 years of the filing of the
Complaint, and were charged one or more fees to extend a mortgage interest rate lock
extension ("Rate Lock Extension Fees") in violation of Defendants' rate lock extension
policy.

36.      Excluded from the proposed Class are: Defendants, their employees, and any entities

in which Defendants have a controlling interest; any of the legal representatives, heirs, successors,

or assigns of Defendants; the Judge to whom this case is assigned and any member of the Judge's

immediate family and any other judicial officer assigned to this case; any attorneys, or their

immediate family, representing the Plaintiff or Members of the proposed Class; and all persons or

entities that properly execute and timely file a request for exclusion from the Proposed Class.

Plaintiff reserves the right to modify or amend the definition of the Proposed Class if, prior to the

Court's determination on whether certification is appropriate, discovery and further information

reveals that the Class should be modified or amended in any way.

37.      **Numerosity:** The members of the Class are so numerous that joinder of all Members

would be impractical. The precise numbers of Class Members can be ascertained through

---

[5] For the TILA claim, within 1 year of the filing of the Complaint.

discovery, and Class Members are readily identifiable through Defendants' underwriting and other records. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and the Court.

38.     **Commonality and Predominance:** Common questions of fact and law predominate over questions affecting only individual Class Members. There are numerous questions of law and fact common to the Class that predominate, including:

(a) Whether and to what extent the Defendants employed a rate lock extension scheme;

(b) Whether Defendants violated their own rate lock extension policy by charging rate lock extension fees;

(c) Whether Defendants employed policies and procedures that enabled them to charge rate lock extension fees;

(e) Whether Defendants' rate lock extension scheme violates TILA, RESPA, and/or FDUTPA;

(f) Whether and to what extent Plaintiff and putative Class Members suffered damages; and,

(g) Whether Plaintiff and the putative Class are entitled to equitable and injunctive relief.

39.     **Typicality:** Plaintiff's claims are typical of the claims to be advanced by Members of the Class, and their claims encompass those of the other Class Members, in that the facts and circumstances giving rise to liability are the same, the claims are based on the same legal theories, and the damages suffered by Plaintiff are the same kinds of damages suffered by Members of the Class.

40.     **Adequacy:** Plaintiff will fairly and adequately protect and represent the interests of each Proposed Class Member, as their interests do not conflict, their interests are co-extensive with common rights of recovery based on the same essential facts and legal theories, and they are similarly

damaged and are seeking the same remedies. Plaintiff has retained counsel competent and experienced in complex class action litigation, including actions like this one.  Both Plaintiff and Plaintiff's Counsel intend to prosecute this action vigorously.

41.     **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely more than five million dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

42.     Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty that could be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendants have acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

43.     Defendants have, or have access to, address and/or other contact information for the members of the Class, which may be used to provide notice of the pendency of this action.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq.
### Asserted on Behalf of Plaintiff and the Nationwide Class

44.     Plaintiff incorporates by reference Paragraphs 1 through 43 of this Complaint as if fully restated here.

45.     The Real Estate Settlement Procedures Act ("RESPA") prohibits accepting "unearned fees" including "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

46.     In providing mortgages to Plaintiff and the Class, Defendants rendered real estate settlement services—as that term is defined in RESPA, at 12 C.F.R. § 1024.2(b), and by courts—in connection with a transaction involving a federally-related mortgage loan.

47.     Defendants violated RESPA by accepting and splitting an unearned settlement service fee—i.e., a required fee to extend the period to lock in the offered mortgage interest rates of Plaintiff and the Class—between different entities. The fee was not bona fide compensation for a service actually performed because it was paid for no reason. Because Defendants delayed the closing process for Plaintiff and the Class, Defendants should have charged nothing to extend their rate locks.

48.     On information and belief, the Defendants gave or accepted a portion, split, or percentage of that unearned charge among separate legal entities as follows. Better Mortgage Co. is a separate legal entity from Ally Bank Corp. and Ally Financial, Inc., and provides Ally's mortgage lending services, obtaining rate lock extension fees from borrowers in the process. On information and belief, Better Mortgage Co. shares or splits that fee with Ally Bank, N.A., the lender in Ally Bank's mortgage loans, which then shares those unearned fees with Ally Financial, Inc.

49.     As a result, Plaintiff and the Class are entitled to—and Defendants are jointly and severally liable for—damages of three times the amount of the extension rate locks fees, as well as attorney fees and costs. 12 U.S.C. § 2607(d).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, request judgments against Defendants as follows:

A.      Declaring Defendants' actions to be unlawful;

B.      Injunctive and declaratory relief, including injunctive relief permanently enjoining Defendants from performing further unfair and unlawful acts as alleged herein;

C.      For all actual damages and equitable relief, costs, attorney fees, and pre and post judgment interest;

D.      For such other and further relief as the Court may deem proper.

**SECOND CAUSE OF ACTION**
**Truth in Lending Act, 15 U.S.C. § 1601, *et seq.***
**Asserted on Behalf of Plaintiff and the Nationwide Class**

50.     Plaintiff incorporates by reference Paragraphs 1 through 43 of this Complaint as if fully restated here.

51.     Congress passed the Truth in Lending Act ("TILA") to ensure consumer borrowers understood the true cost of consumer credit: "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

52.     One step TILA takes to accomplish that goal is requiring creditors to clearly and conspicuously disclose to borrowers the accurate and full terms of the legal relationship between creditors and consumer borrowers, like Plaintiff and Class Members.

53.     TILA requires that creditors providing residential mortgages provide, among other things, disclosure of finance charges, fees, and a good faith estimate of the costs of closing a residential mortgage loan. 15 U.S.C. § 1638(a).

54.     Defendants are creditors under TILA. 15 U.S.C. § 1602(g).

55.     Defendants violated TILA by failing to meaningfully and/or in good faith disclose finance charges and fees to borrowers who obtained Rate Lock Extension Fees, because Defendants would charge borrowers finance charges/fees to extend the rate lock period in cases of bank-caused delay, increasing financing and/or closing costs in a way borrowers could not predict.

56.     Because Defendants systematically and wrongfully charged borrowers rate lock extension fees, any disclosure of those fees were not meaningful or adequate disclosures of:

- "the aggregate amount of fees paid to the mortgage originator in connection with the loan, the amount of such fees paid directly by the consumer, and any additional amount received by the originator from the creditor[,]" 15 U.S.C. § 1638(a)(18); and/or

- the finance charge, including but not limited to a charge similar to a loan fee or finder's fee. *Id*. § 1605(a)(3), § 1638(a)(3); 12 C.F.R. § 226.4(b)(3).

57.     Plaintiff and the Class have been injured and have suffered monetary losses because of Defendants' violations of TILA.

58.     Plaintiff and the Class are therefore entitled to recover actual and/or statutory damages and attorneys' fees and costs from Defendants, as provided by 15 U.S.C. § 1640(a).

        WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, request judgments against Defendants as follows:

        A.      Declaring Defendants' actions to be unlawful;

WEIL LAW FIRM, P.A.
Citigroup Center, 201 South Biscayne Blvd.  Suite 720, Miami, FL 33131
T: (305) 372-5352   F: (305) 372-5355

B.    Injunctive and declaratory relief, including injunctive relief permanently enjoining Defendants from performing further unfair and unlawful acts as alleged herein;

C.    For all actual damages and equitable relief, costs, attorney fees, and pre and post judgment interest;

D.    For such other and further relief as the Court may deem proper.

**THIRD CAUSE OF ACTION**
**Violation of FDUTPA, Asserted on Behalf of Plaintiff and the Florida Sub-Class**

59.    Plaintiff incorporates by reference Paragraphs 1 through 43 of this Complaint as if fully restated here.

60.    Plaintiff and Class Members bring this Count under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et. seq.*

61.    Plaintiff and each Class Member is a "consumer" under FDUTPA. Fla. Stat. § 501.203(7).

62.    Defendants have engaged and continue to engage in "trade or commerce" within the meaning of FDUTPA.  Fla. Stat. § 501.203(8).

63.    At all relevant times, Defendants and their employees, subsidiaries, affiliates, and other related entities, were agents of one another acting within the scope and purpose of that agency.

64.    FUDTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…" Fla. Stat. § 501.204(1).

65.    FDUTPA "shall be construed liberally" to "make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

66.     Defendants have utilized, and continue to utilize, a trade practice whereby they deliberately charge their consumers rate lock extension fees for delays caused by the Defendants.

67.     This trade practice is deceptive and misleading in a material way, because it is likely to mislead a reasonable consumer acting reasonably under the circumstances. Specifically, Defendants were in a position to know, and did know, that the conduct alleged herein violated Florida law, but nonetheless willfully engaged in such unlawful conduct.

68.     Defendants' actions constitute deceptive and unfair practices that violate FDUTPA, because the acts and practices are materially deceptive and misleading and deceived Plaintiff and Class Members. Defendants' acts and practices also violate RESPA and TILA which are violations of the FDUTPA.

69.     As a direct and proximate result of Defendant' unfair, unconscionable, and deceptive acts and practices, Plaintiff and Class Members have been damaged, including but not limited to incurring a rate lock extension fee, in an amount to be proved at trial.

70.     Defendants are thus liable to Plaintiff and Class Members for declaratory and injunctive relief, actual damages, attorney's fees and costs, and all other remedies available under FDUTPA.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, request judgments against Defendants as follows:

A.     Declaring Defendants' actions to be unlawful;

B.     Injunctive and declaratory relief, including injunctive relief permanently enjoining Defendants from performing further unfair and unlawful acts as alleged herein;

C.     For all actual damages and equitable relief, costs, attorney fees, and pre and post judgment interest;

D.     For such other and further relief as the Court may deem proper.

## IX.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

*/s/     Ronald P. Weil*
Marguerite C. Snyder
Florida Bar No.:079082
msnyder@weillawfirm.net
Ronald P. Weil
Florida Bar No.: 169966
RWeil@weillawfirm.net
**WEIL LAW FIRM, P.A.**
201 S. Biscayne Blvd., Suite 720
Miami, Florida 33131

*/s/ F. Jerome Tapley*
Hirlye R. "Ryan" Lutz, III (*Pro Hac Vice*)
rlutz@corywatson.com
F. Jerome Tapley (FBN 22066)
jtapley@corywatson.com
**CORY WATSON, P.C**.
2131 Magnolia Avenue
Birmingham, Alabama 35205
T: (205) 328-2200
F: (205) 324-7896

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on July 19, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF filing system. I further certify that this Notice was served on all counsel of record via transmission of the Notice of Electronic Filing generated by the Court's CM/ECF system.


<u>*s/ Ronald P. Weil*</u>
Ronald P. Weil

JS 44 (Rev. 10/20) FLSD Revised 02/12/2021

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Karl Grossinger

**DEFENDANTS**
Ally Financial Inc, Ally Bank and Better Mortga

**(b)** County of Residence of First Listed Plaintiff  Miami-Dade County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ronald Weil and Marguerite Snyder, Weil Law Firm, 201 S. Biscayne

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Med. Malpractice

PERSONAL INJURY
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee – Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark
☒ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729 (a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit (15 USC 1681 or 1692)
☐ 485 Telephone Consumer Protection Act (TCPA)
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (See VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)
*(See instructions):* a) Re-filed Case ☐YES ☒NO   b) Related Cases ☐YES ☒NO
JUDGE: ___   DOCKET NUMBER: ___

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §1601 et seq, 12 U.S.C. §2601 et seq, Fla Stat §501.203(7) - violation of statutory duties.
LENGTH OF TRIAL via 14 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ ___
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
DATE  July 19, 2022
SIGNATURE OF ATTORNEY OF RECORD  *Maggie Snyder*

FOR OFFICE USE ONLY : RECEIPT # ___  AMOUNT ___  IFP ___  JUDGE ___  MAG JUDGE ___