IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22228-CIV-WILLIAMS/LOUIS

KARL GROSSINGER, individually and on
behalf of all others similarly situated,

           Plaintiff,

     v.

ALLY FINANCIAL INC.; ALLY BANK;
BETTER MORTGAGE CORPORATION,

           Defendants.
_____/

### DEFENDANTS ALLY FINANCIAL INC. AND ALLY BANK'S
### MOTION TO DISMISS AND ACCOMPANYING MEMORANDUM OF LAW

    Defendants Ally Financial Inc. ("Ally Financial") and Ally Bank ("Ally Bank") (collectively, the "Ally Defendants") respectfully move to dismiss Plaintiff Karl Grossinger's ("Plaintiff") putative Class Action Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). This motion should be granted for the reasons set forth in the accompanying memorandum of law in support.

### MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

    When Plaintiff applied for a mortgage loan, Plaintiff locked in his interest rate for 60 days. That rate-lock period was then extended. Plaintiff claims that he paid a fee for that extension, which he should not have. However, after protesting the fee, Plaintiff received a full refund of the fee through a reduction in out-of-pocket loan costs and a check. Plaintiff, therefore, suffered no injury caused by Defendants and, as such, lacks standing under Article III. Consequently, this

court lacks subject matter jurisdiction over Plaintiff's putative class-action claims, and the Court can dismiss the complaint under Rule 12(b)(1).

The Court also should dismiss Plaintiff's Complaint under Rule 12(b)(6) because Plaintiff's claims are fatally flawed.

*First*, Plaintiff's claim under the Real Estate Settlement Procedures Act ("RESPA") fails because the Eleventh Circuit has ruled that a fee paid by a borrower to secure a desired interest rate—such as the rate-lock-extension fee complained of here—is not a charge subject to RESPA. Therefore, Plaintiff has no claim under RESPA. Even if the fee at issue was subject to RESPA—which it is not—Plaintiff has not adequately alleged the splitting of an improper referral fee for a service not actually performed, which is what RESPA protects against.

*Second*, Plaintiff's claim under the Truth in Lending Act ("TILA") fails because Plaintiff's complaints regarding the business practice of imposing a rate-lock-extension fee has no bearing upon the disclosures required under TILA. Further, as Plaintiff's complaint shows, Ally Bank complied with TILA by using the integrated disclosure form published by the Consumer Financial Protection Bureau ("CFPB") for mortgage loans. That form contains all required TILA disclosures. Plaintiff's TILA claim, therefore, fails as a matter of law.

*Finally*, Plaintiff's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") fails because the statute does not apply to banking organizations regulated by federal agencies, like the Ally Defendants. Moreover, Plaintiff cannot allege that Defendants' conduct caused him any harm.

For all of these reasons, the Court should dismiss Plaintiff's Complaint with prejudice.[1]

---

[1] In addition, the Court should dismiss Ally Financial because Plaintiff does not allege any facts supporting any claims against it, but instead group pleads against it by defining "Ally" as Ally Financial and Ally Bank and refers to them both as "Ally" throughout the Complaint. *See*

## BACKGROUND

Plaintiff alleges that Ally Bank typically commits to fund a customer's mortgage loan at a stated interest rate if the loan closes within a given period, usually 30 to 90 days. Dkt 1 ¶ 16. According to Plaintiff, that commitment is the interest "rate lock," and the 30 to 90 days between lock and closing is the "rate lock period." *Id.* Plaintiff alleges that if the loan closing does not occur within the rate-lock period, that period can be extended. *Id.* ¶ 17. Plaintiff alleges that if the closing delay is the borrower's fault, the borrower pays a fee. *Id.* Plaintiff alleges that if the closing delay is Ally Bank's fault, Ally Bank is supposed to absorb the cost of extending the rate-lock period. *Id.* Plaintiff alleges that Ally Bank explains this rate-lock extension policy to its customers on its website's "Frequently Asked Questions" page. *Id.* Plaintiff alleges that rate-lock-extension fees are reportedly set at one basis point (or 0.01% of the loan amount), per day, depending on the type of the loan. *Id.* ¶ 18. Plaintiff alleges that, despite Ally Bank-caused delays, Defendants attempt to "shift the blame for the delays to their customers" and charge rate-lock-extension fees. *Id.* ¶ 19.

Plaintiff alleges that he sought to refinance the loan securing his home in Miami. *Id.* ¶ 25. Ally Bank approved Plaintiff's refinance application, and on February 4, 2022, issued Plaintiff a loan estimate for a 30-year mortgage loan with a fixed interest rate of 2.99%. *Id.* ¶¶ 25-26. That estimate included a "rate lock" set to expire on April 5, 2022. *Id.* Plaintiff alleges that Defendants caused delays in processing Plaintiff's loan, which necessitated an extension of the rate lock period. *Id.* ¶¶ 27-31. Plaintiff alleges that loan estimates dated February 4, 2022 and February 24, 2022 reflect that "Defendants' original estimated loan charges were shown to be equal to 1.433

---

*generally* Dkt. 1; *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). As identified in the loan documents attached hereto, Ally Financial is not Plaintiff's lender and had no relationship with Plaintiff.

[percent] of the loan amount, or $9,318.00." *Id.* ¶ 32. Plaintiff further alleges that Defendants charged him "a rate lock extension fee of $691.58 as reflected in the difference between the [estimated loan charge] and the loan charge reflected in [Plaintiff's] closing documents, equal to 1.547 [percent] of the loan amount, or $10,009.58." *Id.* Plaintiff includes screenshots of these loan estimates and closing documents in his Complaint. *Id.*

Plaintiff further alleges that he "sent e-mails to Defendants' customer service representatives explaining that he was being charged a fee to extend his interest rate lock when the delay was Defendants' fault, not his own." *Id.* ¶ 33. Plaintiff alleges that "Defendants have not paid the fee[.]" *Id.* However, this is untrue. As Plaintiff alleges, under his February 4, 2022 Loan Estimate, his "locked" interest rate was set to expire on April 5, 2022. *See* Declaration of Susan Cicco ("Cicco Decl."), attached as **Exhibit 1**, ¶ 4. Plaintiff's loan was disbursed on April 28, 2022, which was 23 days after April 5, 2022, the date on which his "locked" interest rate was set to expire. *Id.* ¶ 5. Plaintiff's total rate-lock-extension fee was $1,488.56, which was calculated by multiplying the 23 days that his "locked" interest rate was extended by $64.72 per day (equivalent to one basis point, or 0.01%, of Grossinger's loan amount). *Id.* ¶ 6. Plaintiff was issued a credit on his loan cost origination charges in the amount of $750.00 as a concession toward this rate-lock-extension fee. *Id.* ¶ 7. Moreover, on May 16, 2022, Plaintiff was sent a check for $1,000.00 at Grossinger's request as a refund to cover the remainder of the rate-lock-extension fee (and more). *Id.* ¶ 8. This check was delivered to Plaintiff on May 19, 2022. *Id.* ¶ 9.

## ARGUMENT

I. **Plaintiff lacks Article III standing because he received a full refund of the rate-lock-extension fee prior to filing his class-action lawsuit.**

Plaintiff alleges that Defendants charged him a rate-lock-extension fee. However, Plaintiff received a full refund of the rate-lock-extension fee before he filed the Complaint. Due to this

refund, Plaintiff has not suffered any injury, and he lacks Article III standing. Thus, the Court should dismiss the Complaint in its entirety under Rule 12(b)(1).

      A.     **Rule 12(b)(1) standard.**

Challenges to a party's standing are properly raised under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A Rule 12(b)(1) motion may take the form of a "factual attack," which challenges the existence of subject matter jurisdiction in fact (rather than based on just the pleadings). *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Under a "factual attack," the court must closely examine the plaintiff's factual allegations and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Id.* The court is not limited to the allegations contained in the complaint, and it may consider materials outside the pleadings to determine whether it has jurisdiction. *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating the merits of the jurisdictional claims." *Id.*

      B.     **General principles of Article III standing.**

Article III standing is a jurisdictional question. *See JW v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018). "To have standing, a plaintiff must show that he suffered an injury, that there is a sufficient causal connection between the injury and the conduct complained of, and that there is a likelihood that the injury will be redressed by favorable legal decision." *Id.* at 1264. The irreducible constitutional minimum of Article III standing consists of three elements: (1) the plaintiff must have suffered an actual or imminent injury, or a concrete invasion of a legally protected interest; (2) that injury must have been caused by the defendant's complained-of actions; and (3) the plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The actual or imminent

injury component requires a showing of a harm that is both concrete and actual or imminent, not conjectural or hypothetical. *See Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 19-14434, 2022 U.S. App. LEXIS 25233, at *13-*15 (11th Cir. Sept. 8, 2022).

"Where a plaintiff does not have an actual, concrete, particularized injury-in-fact at the time of filing the complaint, he cannot sufficiently allege that he suffered a loss, and does not have standing to sue." *Barnett v. Fitness Int'l, LLC*, Case No. 20-60658-CIV- DIMITROULEAS, 2020 U.S. Dist. LEXIS 171460, at *7 (S.D. Fla. Sept. 17, 2020). This injury-in-fact requirement applies in putative class-actions like this one: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 n.6 (2016) (quotation omitted). Thus, "[i]ndividual standing requirements must be met by anyone attempting to represent [his or her] own interest or those of a class." *JW*, 904 F.3d at 1265.

  **C.** **Plaintiffs who receive refunds prior to initiating a lawsuit lack Article III standing, regardless of whether the refunds are accepted.**

In applying the general principles of Article III standing, courts in the Eleventh Circuit and beyond hold that a plaintiff who, prior to the commencement of litigation, has been refunded a disputed fee did not suffer injury and therefore lacks standing to sue.

***First***, in *Barnett*, the only injury the plaintiff alleged he suffered in support of the putative class-action complaint was the defendant's failure to refund a monthly gym membership fee following the gym's closure due to the COVID-19 pandemic. *See* 2020 U.S. Dist. LEXIS 171460, at *12. But, the plaintiff acknowledged that the monthly fee was fully and unconditionally refunded before he joined the lawsuit. *Id.* The court rejected the plaintiff's claim that the refund

was a rejected settlement offer or an unaccepted offer of judgment. *Id.* Instead, the court held that the plaintiff's claimed injury was the failure to refund the monthly fee, which was refunded before the plaintiff filed his claim, and, therefore, the plaintiff lacked injury and standing. *Id.* at *12-*13.

**Second**, in *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-CIV, 2018 U.S. Dist. LEXIS 38948, at *1-*2 (S.D. Fla. Mar. 9, 2018), *appeal dismissed*, No. 18-11730, 2018 U.S. App. LEXIS 19724 (11th Cir. July 17, 2018), the court dismissed a putative class-action complaint based on the named plaintiff's lack of Article III standing because the named plaintiff failed to allege an actual injury. The defendant offered a pre-litigation refund for complete relief of the damages the plaintiff alleged. *Id.* Because the plaintiff was offered a full refund, the only injury she actually alleged was mooted even though she did not act on the pre-litigation refund offer. *Id.* (citing *Hamilton v. General Mills, Inc.*, No. 6:16-CV-382-MC, 2016 U.S. Dist. LEXIS 97813, at *5 (D. Or. July 27, 2016) (finding plaintiff's injury mooted by the company's refund offer); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1137 (D. Minn. 2016) (noting cases supporting the general proposition that "when a defendant offers a plaintiff a full refund for all of its alleged loss prior to the commencement of litigation, this refund offer deprives the plaintiff of Article III standing because the plaintiff cannot establish an injury in fact.")).

**Third**, in *Luman v. Theismann*, 657 Fed. App'x 804, 806-07 (9th Cir. 2016), the Ninth Circuit, relying on extensive Supreme Court precedent, affirmed the district court's dismissal when a named plaintiff received a full refund to his credit card account prior to filing suit because he "no longer met the injury-in-fact requirement at the time he filed his complaint" and "never had standing to pursue monetary relief in the first place."

> **D.    Prior to litigation, Plaintiff received a full refund of the rate-lock-extension fee, and, therefore, lacks Article III standing.**

Before filing his Complaint on July 19, 2022, and in response to his expressed concerns, Defendants issued Plaintiff a full refund of the rate-lock-extension fee, through a $750.00 concession on his loan costs and a $1,000.00 check. *See* Cicco Decl. ¶¶ 7-9. Therefore, Plaintiff's complaint that "Defendants have not paid the fee" is moot. *See* Dkt. 1 ¶ 33. This is no different than the refunded fee at issue in *Barnett*. *See* 2020 U.S. Dist. LEXIS 171460, at *12. Because the rate-lock-extension fee was refunded before Plaintiff filed the Complaint, Plaintiff lacks an injury-in-fact and, therefore, lacks standing. *Id.* at *12-*13. Because Plaintiff received a full refund, the only injury he allegedly suffered was mooted, just like the plaintiff's injury in *Hardy*. *See* 2018 U.S. Dist. LEXIS 38948, at *1-*2. Indeed, Plaintiff **could not have met** the injury-in-fact requirement at the time he filed the Complaint and therefore never had standing to pursue monetary relief in the first place. *See Luman*, 657 Fed. App'x at 806-07. Therefore, the Court should dismiss the Complaint in its entirety based on a lack of Article III standing.[2]

**II.    All of Plaintiff's claims in the Complaint fail to state a claim upon which relief can be granted.**

> **A.    Rule 12(b)(6) standard.**

A motion to dismiss brought under Rule 12(b)(6) tests the sufficiency of the complaint. *See Sabir v. Cardarelli*, Case No. 21-61917-CV-SMITH, 2022 U.S. Dist. LEXIS 156238, at *3-*4 (S.D. Fla. Aug. 30, 2022). To survive a motion to dismiss, the facts within the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The appropriate standard for deciding to dismiss a

---

[2] Whether Plaintiff cashed the $1,000 check is of no consequence, as a pre-litigation refund of the full amount at issue moots an injury-in-fact. *See, e.g.*, *Hardy*, 2018 U.S. Dist. LEXIS 38948, at *1-*2.

claim is whether it appears beyond doubt that the plaintiff can prove no set of facts to support his claim." *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). "[A] plaintiff must include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (citing *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010)). Allegations must be more than a formulaic recitation of the elements of a cause of action and raise a right to relief that is beyond mere speculation. *See Twombly*, 550 U.S. at 555.

      **B.**      **Plaintiff's RESPA claim fails to state a claim because a rate-lock-extension fee is not a charge made for the rendering of a settlement service and Plaintiff fails to adequately plead any fee split.**

Plaintiff's RESPA claim fails for two reasons. First, as a threshold matter, a rate-lock-extension fee is not a "charge made or received for the rendering of a real estate settlement service" within the meaning of RESPA § 8(b). Second, Plaintiff has not alleged any facts to support the conclusory allegation that Defendants split rate-lock-extension fees.

            **i.**      **The general framework of RESPA Section 8.**

"Section 8 of RESPA addresses kickbacks and unearned fees." *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir. 2003). "Of particular interest to Congress [in enacting RESPA] was the payment by settlement service providers of commissions or fees in exchange for the referral of a consumer's business." *Id.* (citation omitted). "Congress similarly wished to eliminate fees for which no service was performed and no goods were furnished." *Id.* (citation omitted). "Subsection 8(a) contains the general prohibition on making payments pursuant to any referral fee arrangement. Subsection 8(b), under which Plaintiff pleads here, attempts to close any loopholes by prohibiting any person from giving or accepting any part of a fee unless services were actually performed." *Id.* at 981-82. In its entirety, RESPA § 8(b) provides that:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

See RESPA § 8(b) (codified at 12 U.S.C. § 2607(b)). RESPA § 8(b) "is not a price control provision[,]" but rather is aimed at curbing certain practices. *See Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1291 (11th Cir. 2008). Indeed, "[i]n order to establish a violation of § 2607(b), a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons." *See Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 638 (2012). In the Complaint, Plaintiff does not and cannot allege, as he must under *Freeman*, either that he was charged for settlement services or that such charge was divided between two or more persons.

### ii. A rate-lock-extension fee is not a "charge" for "settlement services."

Under Eleventh Circuit law, a rate-lock-extension fee is not a "charge made or received for the rendering of a real estate settlement service" within the meaning of RESPA § 8(b). Because Plaintiff cannot establish this essential element of his RESPA claim, it fails as a matter of law.

In *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187 (11th Cir. 2010), the Eleventh Circuit addressed "whether, in connection with a residential mortgage loan, charging a loan discount payment—otherwise known as 'points' or 'discount points'—to provide a specific, below-market interest rate constitutes the 'rendering of a real estate settlement service' within the meaning of § 2607(b)." *Id.* at 1189. The Eleventh Circuit affirmed the district court's holding that a "borrower's payment of such points was not for the 'rendering of a real estate settlement service.'" *Id.* According to the Eleventh Circuit, the settlement services referred to in RESPA include "any act undertaken to bring about the execution of a mortgage and a note[,]" and "[t]hat definition does ***not*** include the act of negotiating advance interest terms such as points." *Id.* at 1193-94 (emphasis added). The Eleventh Circuit could not "conceive of a circumstance in which the charging of loan

discount points would qualify under our definition of 'service.' The points paid by the [plaintiffs] were ostensibly in exchange for an interest rate below market, *i.e.*, to 'raise the yield on the loan to the market rate.' As such, the points affect the interest rate and go to the very heart of the loan itself." *Id.* at 1194-95 (internal quotation omitted).

Here, the rate-lock-extension fee was included in the calculation of origination charges (or "points") that Plaintiff paid to lower the interest rate. Like the plaintiff in *Wooten*, Plaintiff paid discount points in exchange for a below-market interest rate. Plaintiff alleges that "[w]hen a customer approaches Ally Bank to get a home mortgage or refinance, [Ally] Bank typically commits to fund the customer's loan at a stated interest rate *if* the home purchase and loan close within a given period, usually 30 to 90 days." Dkt. 1 ¶ 16 (emphasis in original). According to Plaintiff, "[t]hat commitment is the interest 'rate lock,' and the 30 or 90 days is the 'rate lock period.'" *Id*. Plaintiff alleges that "[i]f the real estate closing does not occur within the rate lock period, the period can be extended" in exchange for a fee—the rate lock extension fee. *Id.* ¶ 17. Plaintiff concedes that his rate-lock-extension fee was included in "points" calculated on his Closing Disclosures as part of the loan costs reflected as a percentage of the loan amount. *Id.* ¶ 32. The rate-lock-extension fee, paid as points, is not a settlement service but rather "affect[s] the interest rate and go[es] to the very heart of the loan itself." *See Wooten*, 626 F.3d at 1194-95; *see also* 12 U.S.C. § 2602(3) (defining "settlement service"); 12 C.F.R. § 1024.2(b) (providing examples of "settlement services"); *United States v. Graham Mortg. Corp.*, 740 F.2d 414, 418 (6th Cir. 1984) ("[T]he common thread running among the listed services is that each is an ancillary or peripheral service that . . . is not directly related to the closing of a real estate sale covered by RESPA"). Accordingly, the Court should dismiss Plaintiff's RESPA claim.

        **iii.** **Plaintiff has not adequately alleged that any charge for settlement services "was divided between two or more persons."**

Even if the rate-lock-extension fee qualifies as a charge for settlement services within the meaning of RESPA (it does not), Plaintiff has not adequately alleged, as he must, *see Freeman*, 566 U.S. at 638, that it was divided between two or more persons. Because Plaintiff has not adequately alleged this essential element beyond a conclusory assumption, the Court should dismiss his RESPA claim.

The entirety of Plaintiff's attempt to plead this essential element is limited to his allegation that, ***on information and belief***, "[Better] shares or splits that fee with [Ally Bank] . . . which then shares those unearned fees with [Ally Financial]." Dkt. 1 ¶ 48. Plaintiff, however, "has alleged no facts to support his conclusory allegation that either" Better splits fees with Ally Bank or that Ally Bank splits fees with Ally Financial, "let alone the circumstances under which such split[s] occurred." *See Muniz v. Wells Fargo & Co.*, Case No. 17-cv-04995-MMC, 2018 U.S. Dist. LEXIS 81040, at *6 (N.D. Cal. May 14, 2018).[3] Accordingly, the Court should dismiss Plaintiff's RESPA claim as insufficiently pled.

    **C.** **Plaintiff's TILA claim fails because the business practice of which Plaintiff complains is not subject to TILA and Ally Bank used a model CFPB form compliant with TILA; additionally, Ally Financial is not a creditor under TILA.**

Contrary to Plaintiff's assertion, TILA has no applicability to a lender's alleged business practice of imposing a rate-lock-extension fee. TILA is a disclosure statute requiring lenders to

---

[3] To the extent Plaintiff relies on "an announcement made by [the Ally Defendants], in which" the Ally Defendants reference "a strategic partnership with [Better, who] conducts the sales, processing, underwriting, and closing for Ally's digital marketing offerings . . . while [the Ally Defendants] retain[] control of all the marketing and advertising strategies and loan pricing" *see Muniz*, 2018 U.S. Dist. LEXIS 81040, at *6; Dkt. 1 ¶ 11, Plaintiff's "reliance thereon is unavailing, as such statements . . . do not give rise to a reasonable inference of fee splitting[,]" *see Muniz*, 2018 U.S. Dist. LEXIS 81040, at *6.

state basic rates and figures regarding loans. Plaintiff received the requisite TILA disclosures regarding his mortgage loan on a government-approved form. He does not complain about those disclosures on that form, but instead invokes TILA to purportedly require lenders to identify when they will blame borrowers for closing delays. There is no such requirement under TILA. Moreover, TILA does not apply to Ally Financial because it is not a "creditor" as it relates to Plaintiff's mortgage loan under TILA.

TILA and its implementing Regulation Z are designed to promote informed use of credit, such as material financing terms, including finance charges, annual percentage rates (APRs), and related terms. *See* 15 U.S.C. § 1601(a). "TILA requires creditors to disclose: (1) 'the finance charge,' *see id.* § 1638(a)(3); and (2) 'the aggregate amount of fees paid to the mortgage originator in connection with the loan, the amount of such fees paid directly by the consumer, and any additional amount received by the originator from the creditor,' *see id.* § 1638(a)(18)." *Muniz*, 2018 U.S. Dist. LEXIS 81040, at *7. "[A] plaintiff must present evidence to establish a causal link between (1) the financing institution's noncompliance and (2) his damages" to assert a claim under TILA. *See Turner v. Ben. Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001). In other words, "detrimental reliance is an element of a TILA claim." *Id.*

In order to assist lenders with TILA disclosure compliance, the CFPB publishes a single integrated disclosure for mortgage loan transactions. *See* 15 U.S.C. § 1604(b). "A creditor or lessor ***shall be deemed to be in compliance with the disclosure provisions [*of TILA*]*** with respect to other than numerical disclosures ***if the creditor or lessor . . . uses any appropriate model form or clause as published by the CFPB.***" *Id.* (emphasis added). The CFPB published forms, including for the Loan Estimate and Closing Disclosure, do ***not*** require the disclosure of any purported "business practice" that Plaintiff seeks to impose here. *See* 12 C.F.R. pt. 226, App. H.

In *Muniz*, the court dismissed the claim, like that Plaintiff asserts here, that a lender violated TILA by failing to disclose a purported business practice of not refunding rate-lock-extension fees due to bank-caused delays.  The court explained that the lender used a CFPB form, as reflected in screen shots included with in the complaint, and disclosed in that form what was required under TILA.  *See* 2018 U.S. Dist. LEXIS 81040, at *7-*9.

In this case, the Complaint contains screen shots confirming that the model CFPB forms were used for Plaintiff's Loan Estimates and Closing Disclosure.  *See* Dkt. 1 ¶ 32; CFPB Loan Estimate and Closing Disclosure Forms and Samples, *available at* https://www.consumerfinance.gov/compliance/compliance-resources/mortgage-resources/tila-respa-integrated-disclosures/forms-samples/#loan-estimate-blank (last visited Sept. 15, 2022), attached as **Exhibit 2** (Loan Estimate) and **Exhibit 3** (Closing Disclosure); February 4, 2022 Loan Estimate, attached as **Exhibit 4**; February 24 Loan Estimate, attached as **Exhibit 5**, April 23, 2022 Closing Disclosure, attached as **Exhibit 6**.[4]  Plaintiff complains, however, that Defendants failed to disclose an alleged ***practice*** of blaming borrowers for delays, which, even if true, is not a disclosure that TILA requires.  Indeed, contrary to Plaintiff's claims, nothing more than what Ally Bank disclosed on the model CFPB forms is required.

Further, Plaintiff's Loan Estimates and Closing Disclosure state that Ally Bank, not Ally Financial, is Plaintiff's lender.  *Id.*  Because Ally Financial therefore is not a "creditor" here within the meaning of TILA, *see* 15 U.S.C. § 1602(g); 12 C.F.R. 226.2(a)(17), Plaintiff's TILA claim fails against Ally Financial on this additional basis as well, *see Pickard v. Serra Mazda*, Case No. 2:19-cv-02119-JHE, 2020 U.S. Dist. LEXIS 184125, at *17 (N.D. Ala. Oct. 5, 2020) (citing

---

[4] The Court may consider these Loan Estimates and Closing Disclosures because Plaintiff referenced and relied upon them in the Complaint.  *See Infante v. Bank of Am. Corp.*, 468 Fed. App'x 918, 921 (11th Cir. 2012).

*Mincey v. World Sav. Bank, FSB*, 614 F. Supp. 2d 610, 626 (D.S.C. 2008)) (dismissing TILA claim against parent of subsidiary lender because "the face of the evidence shows that the only creditor, for TILA, was [the subsidiary lender]").

    **D.**    **Plaintiff's FDUTPA claim fails because the Ally Defendants are not subject to the statute, and, in any event, the Ally Defendants did not cause Plaintiff damages.**

The FDUTPA does not apply to regulated banks or banking activity, which means the statute does not apply to the Ally Defendants. In addition, Plaintiff cannot allege a FDUTPA violation because he had knowledge of the purported imposition of the rate-lock-extension fee. Thus, Plaintiff cannot allege causation under the FDUTPA.

    **i.**    **The general framework of the FDUTPA.**

The FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." *See* Fla. Stat. § 501.204(1). "A FDUTPA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *See Club Exploria, LLC v. Aaronson, Austin, P.A.*, No. 6:18-cv-576-Orl-28DCI, 2019 U.S. Dist. LEXIS 47139, at *17 (M.D. Fla. Mar. 21, 2019) (quoting *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008)). To obtain relief, a consumer must plead both that the conduct complained of was unfair or deceptive and that the consumer was aggrieved by the unfair and deceptive act. *Macias v. HBC of Fla., Inc.*, 694 So.2d 88, 90 (Fla. 3d DCA 1997).

    **ii.**    **The Ally Defendants are exempt from the FDUTPA.**

"Mortgage lending is an aspect of the banking business." *Bloch v. Wells Fargo Home Mortg.*, Case No. 11-80434-CIV-RYSKAMP/HOPKINS, 2012 U.S. Dist. LEXIS 201378, at *9 (S.D. Fla. June 12, 2012) (citing *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 18 (2007)). Under Fla. Stat. § 501.212(4), the FDUTPA "does not apply to: [. . .] (4) [a]ny person or activity regulated

under laws administered by: [. . .] (c) [b]anks, credit unions, and savings and loan associations regulated by federal agencies[.]" *See also Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 778-79 (Fla. 5th DCA 2007) ("[The] FDUTPA does not apply to banks . . . regulated by the state or the federal government" irrespective of the activity in question). Such organizations are expressly exempt from the FDUTPA.

For instance, in *Regions Bank v. Legal Outsource PA*, Case No. 2:14-cv-476-FtM-29MRM, 2015 U.S. Dist. LEXIS 162248, at *14-*15 (M.D. Fla. Dec. 3, 2015) (internal citations omitted), the court took "judicial notice that [counter-defendant] [was] regulated by the Federal Reserve Board and [was] insured by the Federal Deposit Insurance Corporation since 1934. As a member bank of the Federal Reserve, [counter-defendant] [was] subject [to] the Federal Reserve's regulations, including the consumer protection regulations." The court noted that the "Federal Reserve has a 'Consumer Complaint Program' where the Board responds to inquiries and complaints in a database 'which it regularly reviews to identify problems . . . [and] to uncover potentially unfair and deceptive practices within the banking industry.'" *Id.* (citation omitted). Because the counter-defendant was subject to regulation by the Federal Reserve, the court dismissed the FDUTPA claims against it. *Id.* at *15; *see also Wilson v. Everbank, N.A.*, 77 F. Supp. 2d 3d 1202, 1221 (S.D. Fla. 2015) (dismissing FDUTPA claim asserted against federal savings association regulated by the OCC); *George v. Wells Fargo Bank, N.A.*, Case No. 13-80776-CIV-MARRA, 2014 U.S. Dist. LEXIS 2000, at *15 (S.D. Fla. Jan 8, 2014) (dismissing FDUTPA claim against national bank); *Bloch*, 2012 U.S. Dist. LEXIS 201378, at *10-11 (same); *Sovereign Bonds. Exch. LLC v. Fed. Republic of Germany*, 899 F. Supp. 2d 1304, 1315-16 (S.D. Fla. 2010) (dismissing FDUTPA claim against German bank because "German Banks—even as foreign banks—are subject to a variety of federal regulations [and] may not be subject to FDUTPA

claims."); *Brown v. Capital One Bank (USA), N.A.*, 15-60590-CIV, 2015 WL 12712062, at *2 (S.D. Fla. June 19, 2015) (dismissing FDUTPA claim against Capital One because it is a national bank); *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009) (dismissing FDUTPA claims against J.P. Morgan Chase & Co., a Bank Holding Company, "because the statute does not apply to federally regulated banks such as Chase.").

In this case, Ally Bank, a bank and a member of the Federal Reserve System, is subject to regulation, supervision, and examination by the Federal Reserve Board and is expressly exempt from the FDUTPA. Ally Financial, a Bank Holding Company and Financial Holding Company, is a banking organization subject to regulation, supervision, and examination by the Federal Reserve Board. *See* Ally Financial Inc., Fiscal Year 2021 Form 10-K Excerpt, *available at* https://www.ally.com/about/investor/sec-filings/ (last visited Sept. 15, 2022), attached as **Exhibit 7** at 6-7.[5] Such organizations are exempt from the FDUTPA. Given the extensive system of federal regulation to which Ally Bank and Ally Financial are subject through the Federal Reserve Board, the Court should dismiss Plaintiff's FDUTPA claim asserted against them. *See, e.g.*, *Regions Bank*, 2015 U.S. Dist. LEXIS 162248, at *14-*15; *Caban*, 606 F. Supp. 2d at 1371.

### iii. Plaintiff does not and cannot plead the requisite causation element.

In order to plead causation under the FDUTPA, there must be some causal connection between the alleged deceptive or unfair act and the alleged damages. *See, e.g.*, Fla. Stat. § 501.211(2) ("[A] person who has suffered a loss ***as a result of*** a violation of this part . . . ." (emphasis added)); *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA

---

[5] The Court may take judicial notice of the Federal Reserve Board's regulation of the Ally Defendants, *see Regions Bank*, 2015 U.S. Dist. LEXIS 162248, at *14-*15, and of Ally Financial's Fiscal Year 2021 Form 10-K, *see Bleier v. Coca-Cola Co.*, Civil Action File No. 1:06-CV-697-TWT, 2006 U.S. Dist. LEXIS 75171, at *10 n.2 (N.D. Ga. Oct. 13, 2006) (citations omitted) ("The Court may take judicial notice of [defendant's] Form 10-K filing.").

1998) ("[T]o be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer."). Plaintiff does not and cannot plead that causation here.

While a FDUTPA plaintiff does not need to show actual reliance on the representation or omission at issue, *see Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011), the plaintiff must prove that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances, *see Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. App'x 565, 567 (11th Cir. 2009). Indeed, "Florida appellate courts and the Eleventh Circuit have rejected FDUTPA claims based on lack of proximate causation or an insufficient causal link between the deceptive act and damages." *Rebekah Kurimski v. Shell Oil Co.*, Case No. 21-80727-CV-MIDDLEBROOKS, 2022 U.S. Dist. LEXIS 136040, at *33 (citing *e.g.*, *Molina v. Aurora Loan Svcs., LLC*, 635 Fed. App'x 618, 627 (11th Cir. 2015) (affirming dismissal of FDUTPA claim because the plaintiff did not allege a causal link between the alleged deception and damages)).

"Reasonable consumers generally do not choose to ignore accurate pricing information displayed conspicuously during the transaction[.]" *Id.* at *29-*30. "When viewed in the context of the circumstances as a whole, where the true information is conspicuously disclosed in a manner such that 'it is not likely that a consumer acting reasonably would have been deceived by the alleged statements,' causation is lacking." *Id.* at *30 (citing *Cold Stone*, Fed. App'x 567-68; *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1286-87 (11th Cir. 2007)). Similarly, a "[p]laintiff's actual knowledge breaks the chain of causation[.]" *Id.* at *32. For instance, in *Kurimski*, the plaintiff alleged that "[a]fter realizing she would be charged [a] [higher] 'credit' price" she "was confronted with the decision whether to continue with her purchase" and "then chose to complete the . . . transaction at the credit price[.]" *Id.* The court found the plaintiff's

conduct "sever[ed] the causal link" because she "realized and internalized the true price and made a conscious decision to" complete the transaction at the higher credit price. *Id.* at *34.

In this case, Plaintiff alleges that he sought to refinance the mortgage loan securing his home in Miami. Dkt. 1 ¶ 25. He alleges that on February 4, 2022, Ally Bank issued him a Loan Estimate that included a quoted interest rate of 2.99 percent on a 30-year fixed mortgage that included a "rate lock" set to expire by April 5, 2022. *Id.* ¶ 26. Plaintiff further alleges that on loan estimates dated February 4, 2022 and February 24, 2022, "Defendants' original estimated loan charges were shown to be equal to 1.433 [percent] of the loan amount, or $9,318.00." *Id.* ¶ 32. Plaintiff alleges that Defendants charged him "a rate lock extension fee of $691.58 *as reflected in the difference between the* [estimated loan charge] and the loan charge *reflected in* [*Plaintiff's*] *closing documents*, equal to 1.547 [percent] of the loan amount, or $10,009.58." *Id.* (emphasis added). "[T]he true information [was therefore] conspicuously disclosed" in the closing documents. *See Kurimski*, 2022 U.S. Dist. LEXIS 136040, at *30. Moreover, Plaintiff alleges that he in fact "sent e-mails to Defendants' customer service representatives explaining that *he was being charged a fee* to extend his interest rate lock when the delay was Defendants' fault, not his own." *Id.* ¶ 33 (emphasis added). As such, Plaintiff's "actual knowledge breaks the chain of causation." *See Kurimski*, 2022 U.S. Dist. LEXIS 136040, at *30. Plaintiff "was confronted with the decision whether to continue with" his refinancing transaction and "then chose to complete the . . . transaction" with loan charge reflected in his closing documents. *See id.* at *34. Plaintiff's allegations therefore render impossible his satisfaction of the FDUTPA's causation element, and, as such, the Court should dismiss the FDUTPA claim.

## CONCLUSION

The Court should dismiss the Complaint in its entirety with prejudice.

Dated: September 15, 2022            **REED SMITH LLP**

*/s/ Edward M. Mullins*
Edward M. Mullins (FL 863920)
200 S Biscayne Blvd Suite 2600
Miami, FL 33131
Phone: (786) 747-0203
Fax:    (786) 747-0299
Email: emullins@reedsmith.com

Perry A. Napolitano (*pro hac vice*)
Justin J. Kontul (*pro hac vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Phone: (412) 288-7230/3098
Fax:    (412) 288-3063
Email: pnapolitano@reedsmith.com
          jkontul@reedsmith.com

*Counsel for Defendants
Ally Financial Inc. and Ally Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Edward M. Mullins*
Edward M. Mullins (FL 863920)
*Counsel for Defendants
Ally Financial Inc. and Ally Bank*